RECEIVED
IN MONROE, LA

MAR 12 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| PEGGY SUE KNOX | CIVIL ACTION NO. 07-606 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CITY OF MONROE AND DON HOPKINS | MAG. JUDGE KAREN L. HAYES |

RULING

This is an employment discrimination action brought by Plaintiff Peggy Sue Knox ("Knox") against her former employer, City of Monroe ("the City"), and her former supervisor, Don Hopkins ("Hopkins"). Knox alleges that she was terminated because of her race (white), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.("Title VII"), 42 U.S.C. § 1981, and the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. 23:301, et seq.[1] She also asserts state law claims of negligent or intentional infliction of emotional distress.

Defendants have filed a Motion for Partial Summary Judgment [Doc. No. 16], which is oppposed in part by Knox. For the following reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

I. FACTS AND PROCEDURAL HISTORY

On November 9, 1998, Knox was hired by the City as a truck driver.

After she sustained an eye injury, Knox could no longer work in the sun and was

---

[1] Knox also asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, but Defendants have not moved for summary judgment on these claims.

reassigned to a clerical position with the City.

In April 2004, Hopkins, who is black, became the Public Works Superintendent and Knox's supervisor. Knox claims that, at that time, he made statements "to the effect of replacing white clerical personnel with blacks." [Doc. No. 26, ¶ 6].

In July 2004, Knox was moved from the "front office" to a rear dock. A black female employee was allegedly moved to the front office position.

In October 2004, Knox was allegedly one of approximately 80 employees who received written warnings on excessive absenteeism.

On January 26, 2005, Hopkins fired Knox for the stated reason of her excessive absenteeism. Knox contends that the stated reason was a pretext for discrimination.

On April 3, 2007, Knox filed a Complaint in this matter. On June 26, 2007, Defendants timely filed an Answer, raising the defense of prescription, among others.

On October 17, 2007, Defendants obtained leave of Court to file an Amended Answer. In that Amended Answer, Defendants again raised the defense of prescription and also that Knox failed to state a claim.

On January 29, 2008, Knox obtained leave of Court to amend her complaint to add an claim under the Family and Medical Leave Act. On February 6, 2008, Defendants filed a second Amended Answer reasserting its previous defenses and again specifically asserting a statute of limitations/prescription defense.

## II.  LAW AND ANALYSIS

### A.  Standard of Review

Knox takes issue with Defendants' styling of the pending motion as a motion for

2

summary judgment. Knox contends that this motion is in actuality an untimely motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

As Defendants properly point out, Federal Rule of Civil Procedure 56 provides that "[a] party against whom relief is sought may move at any time, **with or without supporting affidavits**, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b) (emphasis added).[2]

Further, to the extent that Knox contends that Defendants have raised an untimely defense to her § 1981 claim, the Court disagrees. Defendants timely raised the defenses of failure to state a claim and prescription in their pleadings.

Having determined that Defendants have properly filed a motion for partial summary judgment, the Court now sets forth the applicable standard of review. Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir. 1992). If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material

---

[2] A party may also move for judgment on the pleadings under Rule 12(c) once the pleadings are closed. Fed. R. Civ. P. 12(c). At the time this motion was filed, the pleadings were not closed.

3

facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### B. Title VII Claim Against Hopkins

Knox originally asserted a Title VII claim against her former supervisor, Hopkins. Defendants contend that she has failed to state a claim as a matter of law, and Hopkins is entitled to summary judgment.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).

Under Title VII, "relief . . . is available only against an employer, not an individual supervisor or fellow employee." Foley v. University of Houston Sys., 355 F.3d 333, 340, n.8 (5th Cir. 2003); see also 42 U.S.C. § 2000e(b) (definition of "employer"); Grant v. Lone Star Co., 21 F.3d 649, 651-53 (5th Cir.1994) (individual not liable under Title VII unless he meets definition of "employer").

In Opposition to Defendants' Motion for Partial Summary Judgment, Knox agrees that she has no Title VII cause of action against Hopkins individually. In her subsequently filed Amended Complaint, Knox asserts a Title VII claim against the City, but not against Hopkins. [Doc. No. 26]. Accordingly, to the extent that Knox still asserts a Title VII claim against Hopkins, Defendants' Motion for Partial Summary Judgment is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

### C. State Law Claims Against Hopkins and the City

Knox originally asserted state law claims of negligent or intentional infliction of emotional distress and of race discrimination under the LEDL against both Defendants.

4

Defendants have moved for summary judgment on the basis that these claims have all prescribed. Knox agrees that the claims are prescribed and does not assert any state law claims in her Amended Complaint. [Doc. No. 26]. Accordingly, Defendants' Motion for Summary Judgment on Knox's state law claims is GRANTED, and these claims are DISMISSED WITH PREJUDICE.

### D.    Section 1981 Claim Against Hopkins in his Individual Capacity

Knox also asserts claims against Hopkins individually pursuant to 42 U.S.C. § 1981.[3]

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white[4] citizens." 42 U.S.C. § 1981(a). Section 1981's protections against race discrimination

---

[3]Perhaps because Knox did not bring her claims against Hopkins under 42 U.S.C. § 1983, she failed to explain whether she seeks to hold Hopkins liable in his official or individual capacity or both. Knox states only that she has brought suit against Hopkins "individually." The Court will assume for purposes of this ruling that Knox intended to bring both official and individual capacity claims against Hopkins.

> In Hafer v. Melo, 502 U.S. 21 (1991), the Supreme Court explained that
>
> official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" . . . Because the real party in interest is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." . . .
>
> Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law. . .While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities . . . may assert personal immunity defenses.

Id. at 25 (citations omitted).

[4]Despite its language, § 1981 prohibits racial discrimination against white persons, as well as persons of other races. See McDonald v. Sante Fe Trail Transportation Co., 427 U.S.

5

"include[] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); see Felton v. Polles, 315 F.3d 470, 483 (5th Cir. 2002) (citing § 1981) (other citations omitted), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

Defendants argue that, based on Fifth Circuit precedent, Knox has no cause of action against Hopkins in his individual capacity. In the alternative, Defendants argue that Knox was required to assert her § 1981 claim through 42 U.S.C. § 1983 because Hopkins is a municipal actor, and that she failed to do so. Finally, Defendants contend that Knox cannot now amend her complaint to properly assert a § 1983 claim because the amendment will not relate back to her original Complaint, and the statute of limitations has run.

Defendants rely on Oden v. Oktibbeha County, Miss., 246 F.3d 458 (5th Cir. 2001), for their contention that Knox is precluded from suing Hopkins in his individual capacity. In Oden, a deputy brought suit against a county sheriff and the county for failure to promote under Title VII and § 1981. Under § 1981, Oden asserted both official and individual capacity claims against the sheriff. Addressing the individual capacity claim, the Fifth Circuit explained that the Supreme Court "has not imposed personal liability on **elected** officials for discrimination in the terms and conditions of local government employment contracts." Id. at 464 (emphasis added). Relying on Title VII case law,[5] the Fifth Circuit concluded that "when a plaintiff asserts a cause

---

273, 287-96 (1976).

[5]The Fifth Circuit's reliance on case law interpreting Title VII is unusual. While employment discrimination claims brought under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 are analyzed under the same evidentiary standard, see Lawrence v. University of Tex. Med.

6

of action under § 1981 for discrimination in the terms and conditions of a municipal employment contract, the proper defendant is the government employer in his official capacity. Because Sheriff Bryan's choice to promote [someone other than the plaintiff] to chief deputy was an official decision, he is not personally liable under § 1981."[6] Id.

In both earlier and more recent cases, the Fifth Circuit has recognized a cause of action against an unelected government employee in his individual capacity. The first case to address this issue was Faraca v. Clements, 506 F.2d 956 (5th Cir. 1975). The Faracas, a racially mixed couple, were denied employment at a Georgia mental retardation center and brought suit under § 1981 against the director who made the decision. "Technically, the State of Georgia was the prospective employer and only it would be in a position to refuse to enter into a contract." Id. at 959. Therefore, the Faraca Court explained that the director's liability "must be assessable for interfering with the right to contract." Id. Relying on Supreme Court decisions interpreting 42 U.S.C. § 1982, the Faraca Court determined that § 1981 should be interpreted broadly to prohibit

---

Br. at Galveston, 163 F.3d 309, 311 (5th Cir. 1999), they differ in terms of individual liability. Individuals are not liable under Title VII in either their individual or official capacity. Ackel v. National Communications, Inc., 339 F.3d 376, 381 at n. 1 (5th Cir.2003). Title VII imposes liability only on "employers" as defined by the statute. Felton, 315 F.3d at 484 (citing 42 U.S.C. § 2000e(b) (definition of "employer") & 2000e-2(a) (inter alia, proscribes racial discrimination by "employer")).

[6]The Fifth Circuit's use of language in Oden also causes some confusion. First, the Oden Court states that the Supreme Court "has not imposed personal liability on **elected officials** for discrimination in the terms and conditions of local government employment contracts," but in a footnote on the same page, the Oden Court explains that its "decision regarding personal liability under § 1981 only applies to liability of **local government officials** for their decisions affecting municipal employment contracts." Cf. 246 F.3d at 464 to 246 F.3d at 464 n.5. Nevertheless, it appears to this Court that the Fifth Circuit draws a distinction between elected officials and unelected municipal employees. In this case, Oden would be on point if Knox had been fired by the Mayor, an elected official, instead of Hopkins, an unelected Public Works Superintendent.

7

the director's conduct and affirmed the district court's decision awarding damages to the Faracas. Id. (citing Sullivan v. Little Hunting Park, Inc., 396 U.S. 229 (1969) (other citations omitted)).

In Bellows v. Amoco Oil Co., 118 F.3d 268 (5th Cir. 1997), the Fifth Circuit returned to the issue of whether a cause of action is available under § 1981 against a third party for interference with the plaintiff's contractual rights. Although Bellows involved actions by private parties, the Fifth Circuit's discussion of Faraca is instructive:

> On appeal, we . . . conclud[ed] that the director could be held personally liable under section 1981 for interfering with the plaintiffs' right to contract with their prospective employer, the State of Georgia. **The director in Faraca was only nominally a third party. In substance, because he was acting on behalf of the state when he decided not to hire Faraca-thus making his hiring decision indistinguishable from that of the state-the director and the state were essentially one and the same.** . . Unlike the situation in Faraca, where the third party and prospective contracting party were the same party, Amoco is separate and distinct from PICI, Bellow's contracting party. Since Faraca, this Court has not offered any opinion as to whether all third party interference claims are actionable under section 1981, and we decline to rule on this issue today.

Id. at 274 (emphasis added).

In this case, Hopkins, like the director in Faraca, was the decisionmaker for the City, and, thus, Knox may bring suit against him individually. See also Foley v. University of Houston Sys., 355 F.3d 333, 337-38 (5th Cir. 2003) ("**We have . . . accepted** that § 1981 liability will lie against an individual defendant if that individual is "'essentially the same' as the State for the purposes of the complained-of conduct"; if the defendants, former colleagues of plaintiffs, "exercised control over the faculty positions and titles held by [the plaintiffs,] . . . the [defendants] were 'essentially the same' as [the University of Houston]."); cf. Oden, 246 F.3d at 464 n.3 (There was no evidence that Sheriff Bryan's employment decision "was in accordance with any custom or policy of the County[; r]ather, Sheriff Bryan's employment decision

8

represented the policy of the Sheriff's Department, a separate government entity."). Accordingly, the Court finds that Knox has a cause of action against Hopkins in his individual capacity, if properly asserted, and Defendants' Motion for Partial Summary Judgment on this basis is DENIED.

However, Defendants further contend that Knox must have asserted any such claim against Hopkins under 42 U.S.C. § 1983. On this issue, Defendants are correct.

This issue was first raised in a 1989 Supreme Court case, Jett v. Dallas Independent Sch. Dist., 491 U.S. 701 (1989). Jett, a white male, was employed by Dallas Independent School District ("DISD") as a teacher, athletic director, and head football coach at a predominantly black high school. The school's principal recommended that Jett be relieved of his duties as athletic director and coach after he and Jett had repeated disputes over school policies and the football program. The DISD's Superintendent affirmed the recommendation and reassigned Jett. Id. at 705. Among other actions, Jett alleged that the principal and the DISD violated § 1981 because his removal was allegedly based on his race. The issue before the Supreme Court was whether the "limitations on municipal liability under § 1983 are applicable to violations of the rights protected by § 1981." Id. at 711. After a lengthy review of the legislative history of both § 1981 and § 1983, the Supreme Court concluded that "Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." Id. at 731. Therefore, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981." Id. at 733.

Shortly after Jett was decided, Congress passed the Civil Rights Act of 1991, Pub. L. No.

9

102-166, § 101, 105 Stat. 1071, which added subsections (b) and (c). Subsection (c) extended § 1981 rights to public or government employees. See 42 U.S.C. § 1981(c) ("The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of state law."). Following the 1991 amendments, there was a split of authority as to whether Jett was still viable.

In 2002, the Fifth Circuit was presented with the issue of Jett's continued viability in Felton v. Polles, 315 F.3d 470 (5th Cir. 2002). The Felton Court considered the same issue before this Court: whether a plaintiff could "assert a claim against his supervisor, in his individual capacity" for a violation of § 1981 "when that § 1981 right had *not* been asserted through 42 U.S.C. § 1983." Id. at 473. One of the Felton plaintiffs, Carter, was employed by the State of Mississippi in its Department of Wildlife, Fisheries, and Parks. He alleged racial discrimination and harassment by his former supervisor, Thomas, and brought suit against Thomas under § 1981. The Fifth Circuit began its analysis by reiterating: "it is not clear whether a § 1981 claim lies against an individual defendant not a party to the contract giving rise to the claim." Id. at 480. The Fifth Circuit then re-examined Faraca and Bellows before concluding that "Thomas could *only* be amenable to § 1981 liability [in his individual capacity] *if* he were 'essentially the same' as the State for purposes of the complained-of conduct." Id. at 480-81. Considering Jett, the Fifth Circuit concluded that "[t]he Supreme Court did not make a distinction between state entities and individuals acting pursuant to color of state law. Therefore, when a state employee seeks to hold an individual fellow state employee liable for damages for violation of § 1981 rights, such claim must also be pursued through the remedial provision of § 1983." Id. at 482. The Fifth Circuit explained that "requiring § 1981 claims against state actors

10

to be pursued through § 1983 is not a mere pleading formality," but has other consequences, such as the fact that *respondeat superior* liability is available under § 1981, but not § 1983. Id.

Based on Fifth Circuit persuasive and precedential authority, Knox can only assert a § 1981 claim for racial discrimination against Hopkins in his individual capacity through a § 1983 action. She did not do so.

Nevertheless, Knox argues that Defendants' Motion for Partial Summary Judgment should be denied because the Court can exercise its discretion to allow her to amend her Complaint. See Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading . . . with . . . the court's leave. The court should freely give leave when justice so requires."). The Court agrees. Although this case has been pending for some time, the Court has granted a continuance, and the time for amendment of pleadings under the latest Scheduling Order has not passed. Defendants suffer no prejudice because Knox's § 1981 claims would be timely if filed today if filed under § 1983; there is no need for Knox's second amended complaint to "relate back" to her original filing.[7]

Contrary to Defendants' argument, the correct statute of limitations in this matter is four years, not one year. In a February 2008 per curiam decision, the Fifth Circuit addressed the proper statute of limitations to be applied in a § 1983 action asserting §1981 rights. In Mitchell v. Crescent River Port Pilots Ass'n, No. 07-30525, 2008 WL 410414 (5th Cir. Feb. 14, 2008), the plaintiff, Mitchell, appealed a district court judgment dismissing his claims against the defendant as untimely. Mitchell alleged that he had been denied participation in an

---

[7]Under Rule 15(c)(1), Knox's claims would relate back because the claim "arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Fed. R. Civ. P. 15(c)(1) (B).

11

apprenticeship program to become a river port pilot because of his race. The district court dismissed a number of Mitchell's claims as untimely because they were not filed within one year. Defendants argued that the district court correctly applied the one-year statute of limitations, while Mitchell argued that the federal "catchall" four-year statute of limitations applied.

The Mitchell panel explained that, in 1990, Congress passed this catchall four-year statute of limitations applicable to actions arising under federal statutes enacted after December 1, 1990. Interpreting this statute, the Supreme Court later held in Jones v. R.R. Donnelley & Sons, Co., 541 U.S. 369 (2004), that "'a cause of action aris[es] under an Act of Congress enacted after December 1990–and therefore is governed by § 1658's 4-year statute of limitations–if the plaintiff's claim against the defendant was made possible by a post-1990 enactment.'" Id. at *3 (quoting Jones, 541 U.S. at 382) (internal quotation marks omitted). In Jones, the plaintiff's causes of action included wrongful termination, refusal to transfer, and hostile work environment, all of which related to his "then-current employment" and "arose under the 1991 revision to the Civil Rights Act"; therefore, his claims were subject to the four-year statute of limitations. Id. In contrast, Mitchell asserted "pre-employment claims," which were actionable under § 1981 prior to the 1991 amendments. Id. at *3-4 (citing Patterson v. McLean Credit Union, 491 U.S. 164 (1989) (Patterson provided that § 1981 protected against "the refusal to enter into a contract with someone on the basis of race and . . . against racial discrimination that infects the legal process in ways that prevent one from enforcing contractual rights."). Accordingly, Mitchell's § 1981 claims, asserted through § 1983, were properly subject to a one-year statute of limitation.

In this case, Knox asserts claims of demotion and termination, neither of which were

12

actionable under § 1981 until the 1991 Civil Rights Act. Although § 1983 is the vehicle through which these claims are asserted, Knox would have had no cause of action under § 1983 prior to the 1991 Civil Rights Act. Accordingly, under Jones, Knox's claims are subject to a four-year statute of limitations.[8] Knox was allegedly demoted in July 2004 and was terminated on January 26, 2005. Therefore, at the earliest, Knox was required to file suit by July 2008.

The Court will allow Knox to amend her Complaint to properly assert her § 1981 claims through § 1983. Defendants' Motion for Partial Summary Judgment on these claims is DENIED.

### E. Plaintiff's § 1981 Claims Against the City and against Hopkins in his Official Capacity

Knox has also asserted a § 1981 claim against the City and, possibly, against Hopkins in his official capacity.[9] Knox has also failed to comply with the pleading requirements for these claims.

First, Knox failed to assert her claims against Hopkins and the City for alleged violations of rights provided by § 1981 through a cause of action under § 1983. See Oden, 246 F.3d at 463 (The plaintiff could not "pursue a separate cause of action under § 1981 against Okitibbeha County and the Sheriff in his official capacity," without asserting that claim through § 1983).

---

[8]The Court recognizes that Mitchell is an unpublished opinion and not precedent. However, the Court finds that Mitchell's analysis of the statute of limitations issue persuasive and consistent with the Supreme Court's holding in Jones. Cf. Bryant v. Jones, 464 F. Supp.2d 1273 (N.D. Ga. 2006) (Holding that a § 1983 cause of action asserting § 1981 rights based on failure to promote, transfer, and hostile work environment is subject to the two-statute of limitations applicable to § 1983 in Georgia).

[9]A claim against Hopkins in his official capacity is a claim against the City. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. New York City Dep't. of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978)) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' ").

13

Second, Knox failed to allege a City policy or custom which resulted in the alleged race discrimination against her. See Evans v. City of Houston, 246 F.3d 344, 358 (5th Cir. 2001) (In order for a plaintiff to recover against a municipality under § 1981, she "cannot proceed under a theory of respondeat superior and must instead satisfy the 'custom or policy' test fashioned for suits against a municipality under § 1983.") (citations omitted).

However, for the reasons set forth in the preceding section, the Court finds that it is a proper exercise of its discretion to allow Knox to amend her Complaint and to correct these deficiencies.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment [Doc. No. 16] is GRANTED IN PART and DENIED IN PART. Defendants' Motion for Partial Summary Judgment on Knox's Title VII and state law claims is GRANTED, and those claims are DISMISSED WITH PREJUDICE. Defendants' Motion for Partial Summary Judgment on Knox's § 1981 claims is DENIED at this time. The Court ORDERS Knox to amend her Complaint within ten (10) business days from the date of this Ruling and Judgment to properly assert § 1981 claims against Hopkins and the City through § 1983. If Knox fails to amend within this time, the Court will dismiss her § 1981 claims.

MONROE, LOUISIANA, this 12 day of March, 2008.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE