# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **PEGGY SUE KNOX** | **CIVIL ACTION NO. 07-606** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **CITY OF MONROE AND**<br>**DON HOPKINS** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

This is an employment discrimination action brought by Plaintiff Peggy Sue Knox ("Knox") against her former employer, City of Monroe ("the City"), and her former supervisor, Don Hopkins ("Hopkins"). Knox alleges that the City discharged her because of her race (white) in violation of 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* She also contends that Hopkins is individually liable for race discrimination in violation of §§ 1981 and 1983. Pending before the Court are two Motions in Limine [Doc. Nos. 88 & 90].

For the following reasons, Defendants' Motion in Limine [Doc. No. 88] is GRANTED IN PART and DENIED IN PART, and Plaintiff's Motion in Limine [Doc. No. 90] is GRANTED IN PART and DENIED IN PART.

## I.    DEFENDANTS' MOTION IN LIMINE

Defendants have identified twelve (12) bases for their motion. The Court will address each in turn.

### A.    Punitive Damages

Defendants move the Court to prohibit Knox from "mentioning or referring to punitive

damages against the City." [Doc. No. 88, p. 1]. Defendants contend that Knox cannot recover punitive damages under Title VII or § 1981 (through § 1983).

Knox admits that she is prohibited from recovering punitive damages against the City under Title VII,[1] but argues that she can recover punitive damages against the City and/or Hopkins individually under § 1981.

Pursuant to *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), municipalities are immune from punitive damages awards under § 1983. Further, in *Jett v. Dallas Independent School District*, the Supreme Court held that "the limitations on municipal liability under § 1983 are applicable to violations of the rights protected by § 1981." 491 U.S. 701, 711(1989). As the Supreme Court concluded in *Jett*: "Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." *Id.* at 731. Therefore, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981." *Id.* at 733. Because § 1981 is not a separate cause of action against municipal actors, but must be asserted through § 1983, and because municipalities are immune from punitive damages under § 1983, Knox cannot pursue a claim for punitive damages against the City.

Knox may recover punitive damages against Hopkins in his individual capacity if she can show Hopkins's "reckless and callous indifference" to her "federally protected rights." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "'Reckless or callous indifference' requires 'recklessness in its subjective form, [that is], a subjective consciousness of a risk of injury or illegality and a

_____

[1]*See* 42 U.S.C. § 1981a(b)(1).

2

criminal indifference to civil obligations.'"  *Williams v. Kaufman Cty.*, 352 F.3d 994, 1015 (5th Cir. 2003).

However, Defendants moved the Court to prohibit Knox from referring to or mentioning punitive damages against the **City**.  Accordingly, Defendants' Motion in Limine on the issue of punitive damages is GRANTED, and Knox is prohibited from referring to or mentioning punitive damages against the City under Title VII or § 1981 through § 1983.  She is not prohibited from referring to or mentioning punitive damages against Hopkins individually.

**B.      Knox's Unemployment Compensation Application and Appeal**

Defendants next move the Court to exclude from evidence exhibits relating to Knox's unemployment compensation claim, denial of that claim, and her successful appeal.  Defendants contend that the Appeals Tribunal for the State of Louisiana, Office of Regulatory Services ("the Tribunal") "made numerous errors of fact, and its decision was based on a legal standard (absence of 'legal misconduct') which is not at issue in this case." [Doc. No. 88, p. 2]. Defendants argue that Knox's Exhibits 10, 12, and 13 should be excluded as irrelevant and prejudicial and under Louisiana Revised Statute 23:1638.

Knox responds that the documents at issue are "highly probative" in this type of employment discrimination case and that they should be admitted unless there is evidence of a lack of trustworthiness.  Knox has identified the relevance of the unemployment documents as impeaching the City's position that "employees must maintain a certain level of sick or vacation time to be within its attendance policies." [Doc. No. 96, p. 3].  In a February 18, 2005 letter to the Louisiana Department of Labor ("LDOL"), the City's Human Resources Specialist/ Administrator, Annette Bradford, wrote that Knox used all her vacation and sick time in 2004

and 2005, when, according to Exhibit 13, Knox was paid for unused vacation time after she was fired. [Doc. No. 88, Exh. 2]. Knox further argues that the Louisiana statute relied upon by Defendants prohibits the use of administrative determinations as collateral estoppel, not the admission of documents from the administrative proceedings.

Louisiana Revised Statute 23:1636 provides as follows:

Notwithstanding any provision in this Chapter relative to conclusiveness and finality of administrative determinations, **no findings of fact or law, judgment, opinion, conclusion, or final order** made by an unemployment compensation hearing officer, administrative law judge, or any person with the authority to make findings of fact or law in any action or proceeding pursuant to the administration of this Chapter **shall be conclusive or binding in any separate or subsequent action or proceeding**. **Said determinations shall not be used as conclusive evidence in any separate or subsequent action or proceeding** between an individual and his or her present or prior employer brought before an arbitrator, court, or judge of the state of Louisiana or the United States, regardless of whether the prior action was between the same or related parties or involved the same facts.

LA. REV. STAT. § 23:1636 (emphasis added).

By its plain language, the Louisiana statute at issue does not prohibit the admission of all documents contained in the record of unemployment proceedings. Rather, it provides that the findings of fact or law, judgment, opinion, conclusion, and final orders are not to be given preclusive effect in subsequent litigation in state or federal court. *See id.* Thus, the Court must consider whether the specific documents at issue are otherwise admissible under the Federal Rules of Evidence.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. "Although relevant, evidence may be

excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

Defendants seek an order from the Court excluding three specific exhibits: two "Unemployed Insurance Claims Request for Information," both dated February 11, 2005, and the decision of the Tribunal on Knox's unemployment compensation appeal. *See* [Doc. No. 88, pp. 2-3, Exh. 2 (Plaintiff's Exhs. Nos. 10; 12-13)]. Defendants also seek an order prohibiting Knox from "making any reference to the ruling [of the Tribunal] and the unemployment proceedings." [Doc. No. 88, p. 5].

As Defendants point out, the standard for determining whether unemployment compensation should be awarded is not the same standard at issue in this case of intentional employment discrimination. *See* [Doc. No. 88, Exh. 2, May 10, 2005 Decision of ALJ (finding no "legal misconduct" by Knox and awarding unemployment compensation)]. Accordingly, even if the ALJ's decision has some marginal relevance, that relevance is outweighed by the danger of unfair prejudice to Defendants and confusion to the jury.

Further, while Knox has identified the relevance of some unemployment records, she has not identified the relevance of the two additional items identified by Defendants. Exhibit 12 is a February 11, 2005 request for information from the LDOL, which has handwritten notes on it signed by Annette Bradford. The Court finds that this Exhibit has no relevance.

However, the Court does find that Exhibit 13 is relevant and admissible in this matter. Exhibit 13 is also a February 11, 2005 request for information from the LDOL, which has handwritten notes on it signed by Annette Bradford. This Exhibit indicates that the City paid

Knox for unused vacation pay following her termination. Although the City admits in the Pre-Trial Order [Doc. No. 105] that Knox had unused vacation time when she was terminated, Defendants have not stipulated to this fact and deny that this fact is relevant. The Court has previously found that Knox raised an issue of fact for trial as to the credibility of Defendants' reasons for her termination, that she had excessive absences, and Knox points to her unused vacation time as evidence that she had time available to take when she was terminated. Accordingly, the Court finds that Exhibit 13 is relevant and, thus, admissible. Further, from the Court's review of Knox's exhibits, Exhibit 13 does not appear to be cumulative of any other exhibits for this purpose, nor does it appear to be prejudicial to the City.

Defendants' Motion in Limine is GRANTED IN PART and DENIED IN PART. Knox's Exhibits 10 and 12 are EXCLUDED from evidence, and Knox is prohibited from referring to or mentioning any decision on her request for unemployment compensation.

### C.     Knox's Claimed Disability

In a previous ruling [Doc. Nos. 75 & 76], the Court dismissed Knox's claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Defendants now move the Court to exclude from trial any testimony or evidence referring to Knox's "disability" as a result of her eye injury.

Knox contends that she will not need to present evidence regarding her eye injury and resulting condition if Defendants are precluded from introducing evidence of failure to apply for truck driving jobs. Defendants, however, contend that Knox had a duty to mitigate her damages by applying for truck driving jobs, not the clerical office job she held at the time of her discharge.

The Court has determined, for the reasons set forth in a separate section, *infra*, that Knox

did not have to mitigate her damages by applying for truck driving jobs. Therefore, Knox's disability as a result of her eye injury is irrelevant. Defendants' Motion in Limine is GRANTED.[2]

### D. Evidence of Non-Party Lawsuits and Grievances

Defendants next move the Court to exclude (1) evidence of "a non-party lawsuit against the City, '*Allen D. Johnson v. City of Monroe, et al*,' Civil Action 3:06-CV-635, United States District Court, Western District of Louisiana, Monroe Division," (2) evidence that Hopkins had a grievance filed against him, and (3) evidence that Hopkins also filed his own grievance. [Doc. No. 88, p. 6].

Allen Johnson ("Johnson"), an employee of the Sanitation Division, was fired by Hopkins on October 14, 2005. Johnson then brought suit against the City in 2006. Although some claims were dismissed prior to trial, Johnson went to trial on his claims of violations of procedural and substantive due process under the Fourteenth Amendment to the United States Constitution and Louisiana Constitution, art. 1, § 2; breach of contract under Louisiana law; and retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* The jury entered a verdict in favor of Johnson on his due process and breach of contract claims. *See* [06-635, Doc. No. 73, int. nos. 1-4]. Under a mixed-motives theory, the jury found that Johnson's exercise of FMLA rights was a "motivating factor" in Hopkins's (the City's) decision to fire him, but that Hopkins would have made the same decision to fire Johnson, regardless of his exercise of FMLA rights. *See* [06-635, Doc. No. 73, int. nos. 6-7]. Ultimately, the Court ordered Johnson's reinstatement

---

[2]For the reasons set forth, *infra*, to the extent that Knox contends that she cannot obtain and/or perform certain equivalent clerical positions because of her disability, Defendants are permitted to introduce evidence to refute that contention.

to a position with the City.  Johnson's lawsuit did not involve claims of race discrimination.[3]

Knox has identified Johnson as a witness in this case.  Defendants contend that his testimony could only be about the prior litigation, which is irrelevant and prejudicial.  Defendants contend that the evidence on the grievances is also unfairly prejudicial and also constitutes inadmissible character evidence under Federal Rule of Evidence 404(a)-(b).

Knox responds that the *Johnson* lawsuit involved issues with Defendants' attendance policy and the application of the policy to employees.  Knox intends to offer evidence and testimony from witnesses regarding inconsistent statements by Defendants about their attendance policy and the application of that policy.  If Defendants testify inconsistently with their testimony in the *Johnson* case, then under Federal Rule of Evidence 801(d)(1)(A), Knox will offer their prior testimony.  FED. R. EVID. 801(d)(1)(A) ("A statement is not hearsay if– . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . .").  Knox offers no response to Defendants' motion to exclude evidence of the two grievances.

As the Court understands Knox's intention, statements made under oath in the *Johnson* trial will be offered only if Hopkins's or Tom Janway's ("Janway") testimony at this trial is inconsistent with their prior testimony.  The Court agrees with Knox that, if there is inconsistent testimony, then Knox could offer into evidence the prior inconsistent statements.  The Court cannot determine at this time whether the criteria for admission into evidence will be met.  Accordingly, Defendants' Motion in Limine regarding the prior testimony of Hopkins and

---

[3]Johnson and Hopkins are both African-American.

Janway is DENIED at this time, subject to re-urging at trial.

On the other hand, Knox has listed Jimmy Simmons ("Simmons") and Johnson as witnesses at trial. The Court finds their testimony irrelevant and unduly prejudicial to the extent that they would be asked to testify about Johnson's prior lawsuit. Johnson did not bring a claim of race discrimination, and neither he nor Simmons was involved in the events leading up to Knox's termination. Their testimony could be relevant and admissible if they are called as rebuttal witnesses on the issue of the attendance policy in effect in the Sanitation Division, and the application of that policy to employees. To the extent that Knox intends to offer Johnson's testimony in her case-in-chief, Defendants' Motion in Limine is GRANTED, and Johnson will not be permitted to testify. To the extent that Knox intends to offer Johnson as a rebuttal witness, Defendants' Motion in Limine is DENIED at this time, subject to re-urging at trial. With regard to Simmons, the Court discusses the exclusion of his testimony in a separate section, *infra*.

Finally, Knox did not oppose Defendants' Motion in Limine regarding a grievance filed against Hopkins and a grievance filed by Hopkins. [Doc. No. 88, Exh. 4 (Plaintiff's Exhibit 39 & 40)]. Although Knox states generally that she does not intend to offer character evidence, she has not explained the purpose of these two items of evidence. The Court has reviewed both grievances and finds no relevance to the pending lawsuit. The two grievances involve an apparent conflict between former Sanitation Supervisor, Don Spatafora, and Hopkins, as a Union official, in 2003. Even if the Court could find some marginal relevance in Hopkins' behavior as an employee (and by inference, a supervisor), any such relevance is outweighed by the undue prejudice to Defendants. Additionally, as Defendants point out, the introduction of these

grievances appear to be an attempt to admit improper character evidence under Federal Rule of Evidence 404(a)-(b).  Accordingly, Defendants' Motion in Limine regarding the two grievances is GRANTED, and these items are excluded from evidence.

  **E.**  **Sexual Harassment Allegations Against Wilbert Landis**

  Defendants also move to exclude testimony or evidence relating to allegations of sexual harassment against one of the City's witnesses, Wilbert Landis ("Landis").  Landis was accused of sexual harassment by a black female in January 2005 and retired shortly thereafter. Defendants contend that any evidence or testimony regarding this accusation should be excluded under Federal Rule of Evidence 608(b).

  Knox responds that Defendants' treatment of Landis, an African-American, allegedly in violation of the City's sexual harassment policy, "may be probative of showing racial favoritism." [Doc. No. 96, p. 11].  However, Knox also states that she does not "anticipate attacking Landis' credibility through the fact of sexual misconduct" and that she will advise the Court in advance if she intends to elicit this type of testimony. [Doc. No. 96, p. 11].

  Rule 608(b) provides as follows:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

FED. R. EVID. 608(b).  The Court agrees with Defendants that this type of testimony should generally be excluded under Rule 608(b).  Whether or not Landis engaged in sexual misconduct

does not affect his character for truthfulness or untruthfulness.

As Knox has represented that she does not intend to elicit this testimony, Defendants' Motion in Limine on this issue is DENIED AS MOOT at this time. However, if Knox attempts to elicit this testimony at trial, she should notify the Court in advance and be prepared to provide copies of legal authority to the Court and to opposing counsel supporting her contention that the evidence is admissible.

### F.    Evidence of Estella Warbington's Past Drug Use and/or Rehabilitation

Knox contends, in part, that Hopkins terminated her in order to replace her with an African-American and a friend of his, Estella Warbington ("Warbington"). Defendants anticipate that Knox will offer evidence and testimony regarding Warbington's past drug use and rehabilitation. Defendants move to exclude this evidence under Rules 401 and 402 as irrelevant, under Rule 403 as unduly prejudicial, and under Rule 608(b) as improper character evidence.

Knox responds that Hopkins's knowledge of Warbington's nine years of drug abuse is relevant because it shows that he was willing to replace Knox, a Caucasian, with an African-American, no matter her qualifications.

While Knox's counsel has given the Court his best argument, Warbington's prior drug use is irrelevant to the issue before the jury: whether Hopkins, acting on behalf of the City, terminated Knox because of her race. Evidence regarding Hopkins's selection of Warbington to replace Knox is part of Knox's prima facie showing, i.e. that Knox, a Caucasian, was replaced by Warbington, an African-American. However, it is not the role of the jury (or the Court) to judge the personnel decisions of the City outside a determination whether Hopkins's termination of Knox was racially motivated. Hopkins's knowledge of Warbington's prior drug use does not

11

make that fact more or less likely.[4]  (Indeed, it does not necessarily make her less qualified for a clerical job with the City unless she was a current drug user, a fact that is not alleged.).

Defendants' Motion in Limine on this issue is GRANTED, and evidence and testimony regarding Warbington's prior drug use is excluded.

### G. Hearsay Statements

Defendants move to exclude certain alleged hearsay statements.  First, Defendants move to exclude a statement allegedly made by Hopkins to another sanitation worker, Charles Dorsey ("Dorsey"), that Hopkins wanted to replace the "white ladies" in the office with "black ladies." Dorsey reported this alleged statement to Knox.  Knox did not hear the statement herself. Second, Defendants move to exclude Knox's testimony that "several people" talked about Hopkins's "plan" to move Warbington into Knox's position.

Knox responds that her "only concern in this opposition is the statement regarding replacing whites for blacks." [Doc. No. 96, p. 13].  She contends that there is no double hearsay problem; alternatively, that each level meets a hearsay exception; and, that the statement is admissible under the residual exception in Federal Rule of Evidence 807.

In ruling on Defendants' Motion for Partial Summary Judgment, the Court determined that Knox had no direct evidence of discrimination, only circumstantial evidence.  In reaching that conclusion, the Court addressed these hearsay statements:

> Of these statements, the only possible "direct" evidence of discrimination is the double hearsay statement from Dorsey to Knox that Hopkins wanted to replace the "white ladies" in the office with "black ladies."  *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while

---

[4]Having concluded that this evidence is irrelevant, the Court need not reach Defendants' additional arguments under Rules 403 and 608.

testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").  While Hopkins's alleged statement to Dorsey is "non-hearsay" as an admission by a party opponent, Fed. R. Evid. 801(d)(2), Dorsey's recitation of the alleged statement to Knox is clearly hearsay.  Knox has not argued that any exception renders this statement admissible nor does the Court find any exception which would be applicable.  Even if the residual exception might otherwise apply, the Court cannot find the statement is sufficiently trustworthy when Dorsey later denied under oath that he had heard any "racial comments" in the Sanitation Department and there is no other evidence suggesting that Dorsey's alleged earlier statement is the "true" version. [Doc. No. 57, Exh. H, Dorsey Depo., pp. 23-24].

Likewise, Knox's testimony that "several people" talked about Hopkins's alleged plan to move Warbington into a secretarial position is inadmissible hearsay.

[Doc. No. 79, pp. 13-14].  Despite Knox's contention otherwise, the statement allegedly made in front of Dorsey is classic double hearsay once Dorsey recounted the statement to Knox.  While Knox could certainly offer the statement through Dorsey's testimony (or the testimony of anyone who heard Hopkins make the statement), she cannot offer it through her own testimony.  The Court finds no reason to change its previous determination.

Defendants' Motion in Limine to exclude these statements is GRANTED, and the statements may not be admitted through Knox's testimony.  If Knox presents the testimony of anyone to whom Hopkins made these statements, the statements are admissible as non-hearsay pursuant to Federal Rule of Evidence 801.

## H.       Production of Videotape of Deposition of Michael White

On August 13, 2008, the deposition of a witness, Michael White ("White") was taken in Monroe, Louisiana.  White, a resident of Pittsburgh, California, is beyond the subpoena power of the Court.  *See* Fed. R. Civ. P. 32.

White's deposition was not noticed as a videotaped deposition, but Knox's counsel

produced his own camcorder and recorded the deposition.  *See* FED. R. CIV. P. 30(b)(3)(A)-(B).

Counsel, despite efforts to do so, has been unable to locate the videotape.  Defendants argue that

White's deposition testimony should be offered in evidence in lieu of live testimony and that, if

Knox's counsel can locate the videotape, he should be required to produce it.

Knox agrees with Defendants that White's deposition should be used in lieu of live

testimony.

This matter was discussed at the pre-trial conference.  The Court agrees with Magistrate

Judge Karen L. Hayes that White's deposition may be read into evidence at trial.  Although the

Court was unlikely to have allowed the videotape into evidence,[5] the Court agrees with both

parties that, if Knox's counsel can locate the videotape, then he should provide a copy to

opposing counsel.  However, for purposes of trial, the deposition will be presented by a reader.

Defendants' Motion in Limine on this issue is GRANTED, but, as instructed at the pre-

trial conference, counsel will edit the written transcript of the deposition to be read at trial and

will provide their own readers.

I.      **Knox's EEOC Claim**

Defendants move to exclude four of Knox's exhibits relating to her EEOC charge.

Knox's Exhibit 6 is the January 10, 2006 Charge of Discrimination, which advises Hopkins of

the Title VII and ADA claims against him.  Knox's Exhibit 8 is a December 28, 2006

_____

[5]*See* FED. R. CIV. P. 28(c) ("[A] deposition may not be taken before a person who is any
party's relative, employee, or attorney; who is related to or employed by any party's attorney; or
who is financially interested in the action."); FED. R. CIV. P. RULE 30(b)(5)(B) ("If the deposition
is recorded non-stenographically, the officer must repeat [the officer's name and business
address; the date, time, and place of the deposition; and the deponent's name] at the beginning of
each unit of the recording medium.").

notification letter from the EEOC investigator to the City's Director of Human Resources, notifying him of Knox's claims. Knox's Exhibit 48 is interview notes prepared by an EEOC employee. Knox's Exhibit 61 consists of an EEOC form referencing Knox's "Race" and "Disability" claims, Knox's statements about the alleged violation of her rights under Title VII and the ADA and a cover letter from the City enclosing documents from Knox's personnel file. *See* [Doc. No. 88, Exh. 7, attaching Knox's Exhibits 6, 8, 48, & 61].

Generally, Defendants contend that these documents are not probative to the issues before the jury, include irrelevant and prejudicial information regarding Knox's now-dismissed ADA claim, and would lead to confusion for the jury.

In response, Knox withdrew Exhibit 6 (the Notice of Charge); withdrew Exhibit 48 (the EEOC interview notes); and withdrew the documents in Exhibit 61, other than the letter from Human Resources Director Mike Rhymes ("Rhymes"). With regard to the remaining Exhibits, Knox contends that Exhibit 8, the letter from the EEOC investigator, establishes the time that Defendants had notice of her race discrimination claims and that exclusion of this exhibit will prevent her from establishing a time line of her discharge and replacement, probative of her claim of unlawful race discrimination. As to the letter from Rhymes in Exhibit 61, she contends that it is relevant to "show that the City, even after its legal department reviewed the documents, maintained the position set forth in Plaintiff's personnel file: she was fired for excessive absenteeism despite having a doctor's excuse, not being suspended first and having vacation time on the books." [Doc. No. 96, p. 19].

For those documents as to which Defendants' Motion in Limine is unopposed, the motion is GRANTED, and Knox's Exhibits 6, 48, and 61, other than the Rhymes letter, are excluded

from evidence.

Defendants' Motion in Limine regarding the Rhymes letter contained in Exhibit 61 is DENIED. While the Court finds Rhymes's letter to be of marginal or limited relevance, the letter does state that its personnel documents serve as the City's "statement of position" with regard to Knox's charge of discrimination. The Court cautions Knox's counsel, however, that he cannot argue that the letter serves as some type of admission by the City's legal department. While the Court is aware, as are counsel, that Rhymes is a lawyer, his role in this case is that of Human Resources Director. He is not listed as a witness on either party's witness list, and the Court does not see how Knox's counsel could reasonably argue the inferences he would like to based on this enclosure letter. Therefore, while the Court will allow the letter to be introduced, the Court will not allow counsel to suggest that the letter was sent with the blessing of the legal department without testimony from someone in the legal department to support his theory.

Defendants' Motion in Limine is DEFERRED as to Knox's Exhibit 8. She contends that the letter from the EEOC investigator is relevant and admissible to establish notice to Defendants of her claims and that, if the Court excludes this document, it will affect her ability to present a timeline of her discharge and replacement. However, the letter is dated December 28, 2006, and, according to the EEOC Charge (Knox's Exhibit 61), which she agreed to withdraw, her Charge was filed August 11, 2005. Thus, it is unclear to the Court exactly what Knox contends. No later than April 9, 2009, Knox is required to file a supplemental memorandum explaining clearly to the Court the purpose of Exhibit 8. Defendants may file a response, if they wish to do so, by April 13, 2009.

## J. Knox's Department of Labor Claim

Defendants move to exclude two additional documents relating to Knox's claim for unemployment compensation. Knox's Exhibit 11 is her application for unemployment compensation with the LDOL. [Doc. No. 88, Exh. 8]. Marked on the application is the signature of Annette Bradford and her handwritten statement that Knox was terminated for "excessive absenteeism," and that she was paid for unused vacation time in the amount of $595.27. Knox's Exhibit 15 is Bradford's response to the LDOL's questionnaire on the reason for Knox's termination. [Doc. No. 88, Exh. 8]

Knox responds that these documents are relevant and admissible. Specifically, Knox points out that the correspondence from Bradford (Knox's Exhibit 15) is non-hearsay under Federal Rule of Evidence 801(d)(2)(C).

The Court agrees with Knox that the documents are relevant, admissible, and non-hearsay. Defendants' Motion in Limine as to Knox's Exhibits 11 and 15 is DENIED.

## K. Undisclosed Witnesses

Defendants move to exclude Bradford and Simmons as witnesses in this case because Knox did not disclose these witnesses until she provided her pre-trial inserts.

Knox responds that her earlier failure to disclose Bradford does not prejudice Defendants because she is their employee. Knox states that, in truth, both parties have identified Bradford, although not by name, because she is a records custodian. Knox explains that she wants to call Bradford primarily to authenticate records, but she also points out Bradford's role in providing the City's responses to some of Knox's claims with, for example, the LDOL. In a reply, Defendants have agreed to stipulate to the authenticity of the records. For this reason, a ruling on

Defendants' Motion in Limine as to Bradford is DEFERRED.  If a written stipulation is provided to the Court no later than April 10, 2009, that addresses all Knox's bases for calling Bradford, then Defendants' Motion in Limine will be GRANTED.  If the parties cannot reach a stipulation, they should notify the Court in writing by April 10, 2009, and the Court will rule on this Motion.

With regard to Simmons, Knox responds that Simmons was a supervisor who testified in the *Johnson* case and that there is no prejudice to Defendants because his testimony was attached to Knox's opposition to Defendants' Motion for Summary Judgment.  In their reply, Defendants point out, however, that Simmons's testimony also has no bearing on racial animus in this case.

The Court has ruled above that Knox is not permitted to call Johnson in her case in chief because his testimony is relevant only as rebuttal testimony about the attendance policies in the Sanitation Department.  Knox seeks to call Simmons for the same type of testimony.  She failed to disclose Simmons in a timely manner, and his testimony is likely to be cumulative of testimony offered by Johnson.  Accordingly, Defendants' Motion in Limine is GRANTED as to Simmons, and his testimony is excluded.

L.      **Specific Objections to Plaintiffs' Exhibit List**

On the basis of Defendants' motion, Knox agrees to withdraw her Exhibits 9, 38, and to redact the letter contained in her Exhibit 28, so that handwritten notes are removed.  Knox also agreed to withdraw pages 1-4 of Exhibit 35.  To this extent, Defendants' Motion in Limine is GRANTED.

Knox further states that she would agree to withdraw additional exhibits based on the Court's ruling on mitigation of damages.  For the reasons stated below, the Court has limited the evidence on mitigation of damages.  Therefore, the Court will DEFER ruling on the remainder of

these Exhibits. Knox's counsel must file a memorandum no later than April 10, 2009, notifying the Court of which Exhibits he still anticipates using at trial.

## II. PLAINTIFF'S MOTION IN LIMINE

Knox moves to exclude evidence and testimony in this matter.

### A. Evidence Regarding Knox's Failure to Disclose Her Evening Driving Job

In August 2004, while employed in a clerical position in the Sanitation Division, Knox obtained a second job as a "nighttime" driver for the West Ouachita Senior Center. She transported people in a Dodge van to and from their jobs on Saturdays and Sundays. She worked either in the afternoon from 4:00 P.M. to 5:30 P.M. or in the evening from 8:00 P.M. to 11:00 P.M., working between 12 and 15 hours each weekend. Knox did not inform the City that she had this second job because she did not believe she needed to do so. Knox moves to exclude testimony or evidence regarding her failure to disclose this job. She argues that her failure to disclose is not relevant to her race discrimination claim and would unduly prejudice the jury against her.

In response, Defendants contend that the evidence is relevant as to her ability to drive during daylight hours and that her failure to disclose that fact to the City relates to her credibility and is an appropriate subject for cross-examination.

The Court finds that Knox's failure to disclose a second evening driving job (albeit partially during daylight hours) does not reflect on her credibility. Knox was not asked if she had a second job and then affirmatively denied it. She obtained a second job in the hours after her work for the City.

Knox's Motion in Limine on this issue is GRANTED, and evidence of Knox's failure to

disclose her second job driving a van is EXCLUDED.

**B.    Evidence Regarding Knox's Ability to Drive a Truck**

Knox also moves to exclude evidence relating to her eye impairment and ability to drive a

truck.  Defendants intend to offer evidence through their expert, Dr. Bernard Patty, an

opthamologist, that Knox does not have a serious physical limitation from her eye injury which

prevents her from driving a truck, that she has adequate vision to do so, and that she can drive in

the daytime or in sunlight.  In addition to the testimony of their expert, Defendants intend to offer

evidence that Knox had a CDL Physical Examination and renewed her CDL License.

A plaintiff in an employment discrimination case has a duty to mitigate her damages by

using reasonable diligence to obtain substantially equivalent employment.  *Sellers v. Delgado*

*College*, 902 F.2d 1189, 1193 (5th Cir. 1990).  The reasonableness of a plaintiff's diligence must

be evaluated "'in light of the individual characteristics of the claimant and the job market.'" *Id.*

(quoting *Michigan Dep't. of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983)).   "'Substantially

equivalent employment' is that 'employment which affords virtually identical promotional

opportunities, compensation, job responsibilities, working conditions, and status as the position

from which the Title VII claimant has been discriminatorily terminated.'" *Id.* (citation omitted).

Because mitigation of damages is an affirmative defense, the employer has the burden to

establish that the plaintiff failed to exercise reasonable diligence, and that there were jobs

available which plaintiff could have discovered and for which she was qualified.  *Sparks v.*

*Griffin*, 460 F.2d 433, 443 (5th Cir. 1972); *see also Miles-Hickman v. David Powers Homes,*

*Inc.*, Civil Action No. H-07-0754, 2009 WL 801765, at *11, 11 n. 22 (S.D. Tex., Mar. 24, 2009).

In this case, it is undisputed that Knox suffered an eye injury at work that resulted in a

permanent partial dilation of her left eye.  Defendants argue strenuously that Knox only obtained the clerical position because she requested to be moved indoors due to her eye injury.  However, that decision was made by the City, and she was permanently assigned to a clerical position.  If she had been temporarily assigned to that position and the City had evidence that she could drive a truck, then its argument would prevail.  The Court does not know whether Knox could or should drive a truck, but the fact is she is required under the law to find a job equivalent to the one she held at the time of her termination.  Therefore, Knox had a duty to mitigate her damages by finding a substantially equivalent clerical position, not a truck driving job.

On the other hand, to the extent that Knox contends that she cannot obtain and/or perform certain equivalent clerical positions because of her eye impairment, Defendants are permitted to introduce evidence, through the testimony of Dr. Patty and other evidence, such as the renewal of CDL and the passing of the CDL physical examination, to refute that contention.  *See Gamboa v. Henderson,* 240 F.3d 1074 (Table), 99-20965, 2000 WL 1835289, at *4 (5th Cir. Nov. 29, 2000) ("Front and back pay compensate a plaintiff for wages and other benefits she would have earned if she had continued to work."); *cf. id.*, at *5 (The plaintiff argued that she could "recover back and front pay damages," even though she failed to mitigate her damages, "if she [was] disabled as a result of the defendant's wrongful conduct."  Assuming that this principle was correct, the Fifth Circuit placed the burden "on the plaintiff to prove that the defendant caused her disability.").

Additionally, Defendants have pointed out that Knox listed the CDL physical examination and medical examiner's certificate as exhibits herself.  Obviously, if Knox opens the door to this evidence by introducing it herself, Defendants may inquire about her testimony and

evidence on cross-examination.

Accordingly, Knox's Motion in Limine is GRANTED IN PART and DENIED IN PART. Defendants are not permitted to offer the testimony of Dr. Patty or the exhibits showing that Knox has obtained her CDL and passed a physical examination to prove that Knox has failed to use reasonable diligence in discovering and obtaining a substantially equivalent position to the clerical position she held at the time she was terminated by Hopkins. However, Defendants may offer this evidence if Knox contends that she cannot obtain and/or perform an equivalent position because of her eye impairment or if Knox opens the door to the introduction of this type of evidence in her case in chief.

### C. Copies of Photographs of the Workplace

Knox moves to exclude Defendants' Exhibit 9, comprised of two photographs of Knox's former work area. Knox contends that the area depicted does not show how her work area looked at the time of her employment.

The Court finds that these photographs are relevant and helpful to the jury in having a context for Knox's work area and the need for a person to be present in that particular location. Knox's counsel can address any differences or changes to the work area in his cross-examination of witnesses. Knox's Motion in Limine on this issue is DENIED.

### D. Evidence of Knox's Pre-2002 Doctor's Excuses

Knox moves to exclude evidence that Knox was absent from work prior to 2002. Knox contends only that her doctor's excuse relating to her 2002 eye injury and the doctor's excuses from the time that Hopkins became her supervisor are relevant.

In response, Defendants argue that they intend to offer evidence of Knox's absences and

presentation of doctor's excuses to demonstrate her pattern of absenteeism.

Hopkins became the Sanitation Supervisor in October 2004. According to his own testimony, he found that the Department had a problem with excessive absenteeism and the employees had low morale, in part because of the absenteeism. He created a list of approximately 51 employees who had excessive absences at that time. Thus, it is not Knox's "pattern" of absenteeism throughout her entire employment with the City that is relevant to the issues in this matter, but her absenteeism at or near the time that Hopkins became her supervisor.

Accordingly, Knox's Motion in Limine to exclude pre-2002 doctor's excuses is GRANTED. Additionally, the Court, *sua sponte*, will exclude evidence of Knox's absences and doctor's excuses for those absences in the years prior to 2004. Defendants may request the Court to reconsider this decision if, at trial, Hopkins testifies that he reviewed her employment history of absences or relied in any way on absences prior to 2004, or, alternatively, if Janway testifies that he reviewed her history of absences in upholding Hopkins's decision.

### E.    Janway's Letter Denying Knox's Grievance

Knox moves to exclude Defendant's Exhibit 23, Janway's letter to her stating that he would not reverse Hopkins's decision to terminate her. Knox contends that the letter is a self-serving lay opinion on the ultimate issue at trial.

Defendants respond that the letter is relevant to the issue of discrimination because Janway, a Caucasian, reviewed Hopkins's termination decision and upheld it.

As Defendants point out, Janway will be a witness at trial. The Court will DEFER ruling on Knox's objection until trial. Assuming that the proper foundation is laid during Janway's

testimony, the letter is admissible.[6]  However, the Court will instruct the jury that they are to

make the determination as to whether or not Knox's termination was racially motivated.

### F.  Expert Opinion that Defendants Did Not Violate the Law or Legal Standards

Knox also asserts that City employees cannot offer expert or lay opinion on a legal

conclusion.  Knox has offered no further details to allow the Court to rule on this portion of her

motion.  If Knox has a specific basis for this objection, other than Janway's letter, she can make

that objection through counsel at trial.  Knox's Motion in Limine is DENIED.

### G.  Evidence of Other Sanitation Division Terminations

Knox moves the Court to exclude from evidence exhibits and testimony relating to the

terminations of other Sanitation Division employees.   Defendants intend to introduce the

attendance records of James Lawrence, Donald Maiden, and Cameron Warbington,[7] African-

American employees who were fired for absenteeism after Knox's termination (Defendants'

Exhibits 25-28).  Knox contends that these employees were not similarly situated to her and that

these are post-lawsuit measures taken by the City.  Defendants also intend to introduce the EEOC

Reports for 2006 and 2007 (Defendants' Exhibit 1-3 & 1-4), evidence that employees were

discharged by Hopkins for absenteeism (Defendants' Exhibit G-1), and evidence that employees

were discharged by Hopkins in 2005 for reasons other than absenteeism (Defendants' Exhibit G-

2).

---

[6]The letter is hearsay, so the Court will need to hear the basis for introduction during trial to determine if it meets an exception to the hearsay rule or is offered for a reason other than the truth of the matter asserted.  *See* FED. R. EVID. 801.  The Court cannot make that determination at this time.

[7]Cameron Warbington is Estella Warbington's son.

With regard to the terminations of Lawrence, Maiden, and Warbington, Defendants argue that Knox has confused the issues. As a plaintiff, one way she can establish her burden of proving discrimination is to show that Defendants failed to terminate similarly situated African-American employees. Defendants, on the other hand, offer evidence of these discharges to show that Hopkins applied his attendance policy to all employees, including African-Americans.

Defendants also argue that they offer Exhibit G-1 to disprove Knox's contention in her Second Amended Complaint that Hopkins only terminated her and one other white employee for absenteeism, but the other eighty employees who received notices about excessive absences were not terminated. The Exhibit shows that eight other Sanitation Division employees were also terminated for absenteeism and that three of these employees received the same notice Knox did.

According to Defendants, Exhibit G-2 shows personnel status changes for African-American employees who were discharged by Hopkins for misconduct other than absenteeism. Defendants argue that this Exhibit is relevant to Knox's claim that Hopkins favored African-American employees over Caucasian employees.

Finally, Defendants' Exhibits 1-3 and 1-4 are the 2006 and 2007 EEOC Reports, which show that the percentage of African-American and Caucasian employees has remained "virtually the same" since Hopkins became Sanitation Supervisor.

The Court finds that these Exhibits are all relevant to the issue of whether Hopkins and the City intentionally discriminated against Knox on the basis of her race. While the Court recognizes that some of the exhibits may not be as compelling, e.g., terminations after the City had notice of this lawsuit, the weaknesses of the City's evidence is appropriate for cross-examination by Knox's counsel, rather than exclusion. Knox's Motion in Limine on these

Exhibits is DENIED.

**H.     Mention of Any of the Items in this Motion**

Knox has specifically requested that all counsel, parties, and witnesses be instructed not to mention any items in the motions in limine or the fact that a motion was made. The Court expects counsel to conform their conduct to the rules on courtroom decorum and the tenets of professionalism. Thus, no ruling is necessary on this item. If there is any question as to whether a statement should be made in open court, counsel should request a sidebar.

**III.     CONCLUSION**

For the foregoing reasons, Defendants' Motion in Limine [Doc. No. 88] is GRANTED IN PART and DENIED IN PART, and Plaintiff's Motion in Limine [Doc. No. 90] is also GRANTED IN PART and DENIED IN PART.

MONROE, LOUISIANA, this 6th day of April, 2009.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**